## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

MAR 1 2 2020

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA

v.

KAYLIN FRIE,

*Defendant.*

No. 1:20-CR-66

The Honorable Liam O'Grady

## STATEMENT OF FACTS

The United States and Defendant Kaylin Frie agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven beyond a reasonable doubt with admissible and credible evidence that the defendant, beginning at least in or around March 2016, and continuing through at least in or around June 25, 2019, in the Eastern District of Virginia and elsewhere, knowingly and intentionally conspired with other individuals, to devise and intend to devise a scheme or artifice to defraud, or for obtaining money and property by means of materially false or fraudulent pretenses, representations, or promises, and, for the purpose of executing such scheme or artifice, transmitted or caused to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1349, as charged in Count One of the Criminal Information.

The United States and the defendant further agree that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.      From at least March 2016 through at least June 25, 2019, the defendant and her co-conspirators, for purposes of enriching themselves, obtained and used stolen payment card information—such as the 15- to 18-digit card number typically found on the face of a physical credit or debit card that is known as the "primary account number," a card's expiration date, or a card's security code—as well as stolen personally identifiable information.

2.      At times, the defendant and her co-conspirators trafficked in stolen payment card information.  The defendant and her co-conspirators also used stolen payment card information to make fraudulent purchases at retail stores located within the Eastern District of Virginia and elsewhere.

### The Communication of Stolen Payment Card Information

3.      Since at least March 2016, the defendant communicated with other individuals about the acquisition and use of stolen payment card information.  A common means of communication used by the defendant were instant messaging platforms, such as ICQ.

4.      For example, on or about March 28, 2016, the defendant used ICQ to communicate with Vladimir Michel, a co-conspirator with whom she was in an intimate relationship and at times was living with in Richmond, Virginia, which is within the Eastern District of Virginia.  Michel sent the defendant a payment card ending in 0982, and the defendant then told Michel that Joker's Stash and Brian's Club—two websites dedicated to the sale of stolen payment card information—had particular types of payment cards for sale, later adding that she was "excited."

5.      Law enforcement has identified over 800 unique payment card numbers on the various devices under the defendant's dominion and control, and there were at least 5,400

2

payment cards that were possessed, obtained, distributed, and/or used in furtherance of the conspiracy and reasonably foreseeable to the defendant.

### The Use of Stolen Payment Card Information at Retail Stores

9.      Between at least May 2016 and July 2018, the defendant and her co-conspirators fraudulently obtained high-value goods from retail stores, and the defendant was aware that, in 2018, her co-conspirators often did so by utilizing the contactless payment feature of a cellular telephone.  That is, rather than swiping or inserting a physical payment card encoded with stolen payment card information into a point-of-sale terminal, the defendant and her co-conspirators conducted the fraudulent transaction by holding a cellular telephone (into which another person's payment card information had been inputted) near a point-of-sale terminal.

10.      The defendant and her co-conspirators conducted these fraudulent transactions throughout the United States.

a.      For example, on or about June 23, 2018, Merlin Laguerre, a co-conspirator, traveled to a Best Buy store located in Mechanicsville, Virginia, which is within the Eastern District of Virginia, and used an American Express payment card ending in 1003 to purchase, without authorization, $14,475.89 worth of merchandise.

b.      Likewise, on or about June 29, 2018, Marvin Dumont, a co-conspirator, made fraudulent purchases at two different Best Buy stores in Virginia Beach, Virginia.  At each store, Dumont used an American Express payment card ending in 1002, which had been issued to an individual with the initials "H.C."  The purchases charged to H.C.'s card were without H.C.'s authorization.

c.      Then, on or about July 11, 2018, Laguerre and Michel made fraudulent purchases at a Best Buy store in Denver, Colorado.  In particular, Laguerre went into the Best

3

Buy store and used an American Express payment card ending in 1009 to purchase $2,583.58 worth of merchandise.   Then, approximately 40 minutes later, Michel went into the same Best Buy store and used the same American Express card ending in 1009 to purchase $4,898.03 worth of merchandise.   The American Express payment card ending in 1009 had been issued to an individual with the initials "T.B.," and the possession and use of T.B.'s card was without T.B.'s authorization.

11.     Each fraudulent use of the American Express payment cards described above caused a wire communication to be transmitted from the location of the store at which the fraudulent transaction was conducted to American Express's servers located in Arizona.

12.     The individuals who conducted the fraudulent purchases would sell the merchandise at Michel's direction and then the proceeds would be split among the conspirators. For example, on April 1, 2016, the Michel and the defendant had the following exchange via ICQ regarding the use of a physical encoded American Express card (all errors in original):

| Sender | Message |
|---|---|
| Defendant | The pads I get today do you want me to mail them out tomorrow to [a co-conspirator] |
| Michel | Yeah how much you got so far? |
| Defendant | 6 |
| Michel | Copy |
| Michel | Any toons? |
| Defendant | 600 |
| Defendant | Would have had 8 pads but the other place...smh...I going back tomorroe |
| Defendant | I need a 3rd person so I can stack up faster |

| Sender | Message |
|--------|---------|
| Michel | Facts |

The defendant then asked Michel whether she "should go back to the other today," adding that she now has "a new card" and "[i]t would be nice to total out 8 today." Michel subsequently asked the defendant where she was "jigging at," and the defendant responded, "Va." The pair then exchanged the following messages (all errors in original):

| Sender | Message |
|--------|---------|
| Defendant | I can't jig again with [a co-conspirator] until you send me some more ids |
| Michel | Copy |
| Michel | How much did she get today? |
| Defendant | 4 |
| Defendant | We will cut her her portion after we work these completely |
| Defendant | Cause I'm sorry but we ain't giving her $250 for each pad |
| Defendant | I don't care what anybody has to say about it |
| Defendant | Cause if it's just me and her jigging these pieces that's a lot to break off to her |

### Additional Fraud Acts and Attempts

13.     Michel and the defendant also sought to engage in additional fraudulent transactions.   For example, on or about April 3, 2016, the defendant sent ICQ messages to Michel about obtaining a point-of-sale system and unlawfully charging payment cards.   In particular, the defendant messaged (all errors in original): "So talking to the person I know who runs the gas station.   Everything is activated through the pos system.   We should just buy this,

download the pos system.   And start activating."   The defendant then added, "They have other ones on eBay[.]   I've been watching the videos for this one.   It's the ruby sapphire pos system."

14.     A few days later, on or about April 5, 2016, the defendant messaged Michel that she had setup a system for processing payments and was "ready to start taking new customers and payments."   Then, on April 26, 2016, Michel sent more than 20 payment card numbers to the defendant, along with email addresses and passwords.   The defendant responded four days later, writing that she "did another $1000."   The pair then exchanged the following messages (all errors in original):

| Sender | Message |
|---|---|
| Michel | It came through? |
| Defendant | I haven't checked back yet for the instant deposit. imma bout to check now |
| Defendant | Not available to instant deposit yet. It took like hour and half for the $360. It's only been like an hour |
| Defendant | But this shit is lit for real |
| Defendant | I think as long as we keep it moderate we will be good |
| Michel | Let's get it |
| Defendant | 3 bans a day with 2 accounts /1500 a day on each is 84,000 a month. |
| Michel | LMFAOOO |
| Michel | That's crazy |
| Defendant | Yep! |
| Michel | Let's get it |
| Michel | I'm excited |

15.    Then, on May 1, 2016, Michel and the defendant discussed using stolen social security numbers for fraudulent purchases.  Communicating through ICQ, Michel asked the defendant to open a financial account for another co-conspirator and provided the defendant an individual's name, date of birth, social security number, and address.  After the defendant stated that she was getting a response that the application was being reviewed, which meant "it's a dub," the pair exchanged the following messages (all errors in original):

| Sender | Message |
|---|---|
| Defendant | We need rich people socials or something |
| Defendant | Idk wtf |
| Michel | Damn |
| Michel | Try that young one [a co-conspirator] gave me |
| Defendant | I did remember |
| Defendant | Does your cousin help get people insurance at the hospital? |
| Michel | Oh ok you did i remember |
| Michel | Yeah |
| Defendant | If so that's the reason these aren't going. A lot of people at the hospital who need financial assistance have very low income and are Spanish/or illegal. In other terms that means they have poor credit |
| Defendant | I know this from working at the hospital for 4 years |
| Michel | Ok I'll let him know |
| Defendant | I need people who aren't on his list to call for financial assistance |
| Michel | Ok cool |
| Defendant | I used to make those calls when I worked at the hospital |

7

| Sender | Message |
|--------|---------|
| Defendant | I |
| Defendant | I tried 2 more |
| Defendant | And they are ds too |
| Defendant | It has to be the socials |
| Michel | Smh |

16.     Later in May, Michel and the defendant discussed issues they were having in opening fraudulent financial accounts.  On or about May 19, 2016, the defendant remarked via ICQ that they needed "to be smart about it and no trace of IP addresses."  Michel then responded, "That's a fact," and added, "Yeah how son use to do it is.  He switched phones for each one."  The defendant also stated that she would go to a library the next day to "try the three J gave me," and Michel wrote, "Hopefully it will go through at the library."  The next day, the defendant told Michel that "the payment thing I set up yesterday is lit" but she needed "to do identity verification," which was a problem because she did not "know all the answers."  Michel suggested using a particular website to lookup personally identifying information.  The defendant, however, expressed doubt that the website would work, writing "Yea but that doesn't tell you what car they drive and stuff."  A few days later, on or about May 22, 2016, the defendant advised that she "got the answers rights," had done "$450 so far," and a transfer would happen in a few days.

17.     Similarly, on May 23, 2016, Michel and the defendant had the following exchange on ICQ (all errors in original):

| Sender | Message |
|--------|---------|
| Defendant | So I signed up for the PayPal business app and everything is clear to go to start processing payments |

8

| Sender | Message |
|--------|---------|
| Michel | You lying |
| Defendant | Nope not lying |
| Michel | So it's just up to using the right punchy? |
| Defendant | PayPal likes the swipe more. I'm going to go get the card reader tomorrow |
| Defendant | You can punch also |
| Defendant | But swipe is immediate withdrawal |
| Michel | Try my register |
| Michel | The one in the crib |
| Defendant | You have to use the PayPal swipe thing |
| Defendant | I hooked up the square and it wouldn't do it |
| Michel | Oh ok copy |

18. The defendant used her ill-gotten gains to pay her expenses. For example, on or about May 23, 2016, the defendant told Michel that she only had "a band left in GCs and [she had not] even made [her] car payment yet this month." After Michel asked what she spent "15 Hun on," the defendant stated that the money was spent on a rental, her child's daycare, her "hair," and a payment "to April." The defendant was an active participant with Michel in the fraud as evidenced by the following ICQ exchange also on May 23, 2016 (all errors in original):

| Sender | Message |
|--------|---------|
| Defendant | Did you apply for anything on your trap? |
| Michel | Nope |
| Defendant | You be playing |
| Michel | Im going to do it at the library |

9

| Sender | Message |
|--------|---------|
| Defendant | You should of did that today |
| Michel | Today I was in the crib watching movies all fucking day |
| Defendant | Well that was real productive |
| Michel | Tell me about it smfh |
| Defendant | You have to get in a different mind set. I've been trying shit I need you to try to. Everything I try is a D but I'm still trying |

19.     This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States.   It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

20.     The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: _____

By: _____
Alexander P. Berrang
Nathaniel Smith, III
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Kaylin Frie, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Kaylin Frie


I am defense counsel for Kaylin Frie.   I have carefully reviewed the above Statement of Facts with her.   To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Sicilia Englert, Esq.
Attorney for Kaylin Frie

11